**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSS HAMILTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>XPEDITION LLC dba FORTRESS SAFE and CABELA'S LLC<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

**NATURE OF THE ACTION**

1. This is a case about gun safety. In 2024, the federal government recalled nearly a quarter million biometric gun safes after reports that they could be opened without authorization — including by a child as young as 6 — putting people at risk of injury or death. The recalls were not the result of an anomalous manufacturing problem; instead, they involved numerous gun safe brands sold in most major retailers like Walmart and Amazon.

2. The recent scrutiny of gun safes was prompted by an earlier recall in 2023, which was linked to approximately 40 reports of people gaining access to guns that were thought to be secured in safes, including one involving a fatal shooting of a 12-year-old boy. The 2023 recall involved nine gun safes made by Defendant Xpedition LLC dba Fortress Safe, and these are the same gun safes at issue in this case. The gun safes were sold at major retailers like Defendant Cabela's, where some of the recalled products were re-branded as "Cabela's" guns safes. A Commissioner from the United States Consumer Product Safety Commission ("CPSC") described the 2023 Fortress Safe recall as a "*nightmare scenario*" and "*the most concerning recall that's ever come across my desk*."

3. There is no dispute that the subject gun safes are defective and that customers who bought them did not get what they paid for. Today, tucked away on a remote portion of Defendant Cabela's website that few people are likely to see, is a warning to customers to stop using the gun safes because they "pose[] a serious injury hazard and risk of death." Similarly, Defendant Fortress Safe warns customers on its own website that they "should immediately stop using the biometric reader" installed on the safe. Both Defendants admit that the guns safes are unsuitable for their intended purpose and pose an unreasonable safety hazard.

4. Defendants will not give customers their money back for these defective products. Instead, Defendant Fortress Safe implemented a deficient recall that allows both Defendants to *say* they are doing the right thing, when in fact the primary objective is to protect their bottom line. First, any requests for refunds are denied. A consumer's only option is to receive another biometric safe made by Fortress Safe, regardless of whether they continue to want one or to trust the manufacturer. However, the high number of recent recalls would make

any reasonable person think twice about using a biometric gun safe, especially one made by Fortress Safe. As the CPSC's Commissioner recently explained,

> *At this point, I can understand how it would be hard to trust the safety of biometric gun safes, in general. Don't be surprised if there are more biometric gun safe recalls coming.*

5. Second, by design, the recall received very little publication, with the result that the response rate has been low. An offer to replace gun safes does little good when Defendants do the bare minimum possible to let people know about the offer. But that approach benefits Defendants by minimizing the cost and burden of the recall.

6. Meanwhile, Defendant Cabela's offers no relief at all to its customers, relying on Fortress Safe's inadequate recall as justification. The upshot is that neither Defendant has done much to correct the hazardous gun safes.

7. Accordingly, Plaintiff Hamilton is filing this class action lawsuit to seek all available relief to consumers, to raise awareness that Defendants' gun safes are a hazard, and to "encourage companies to take greater care in avoiding the production [and sale] of hazardous products in the first place." *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2019 WL 6998661 at *10 (C.D. Cal. Oct. 9, 2019) (quoting *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1115-16 (C.D. Cal. 2008)).

## PARTIES

8. Plaintiff Russ Hamilton is domiciled in Altaville, California and may be referred to later in this complaint as a "California Plaintiff." Mr. Hamilton purchased and owns a Cabela's-brand Home Defense Safe with Biometric Lock, model number 4BGGBP, which he bought in approximately Spring 2022 from a Bass Pro store in Manteca, California.

9. Before purchasing his gun safe, Mr. Hamilton reviewed the floor model of the product on the sales floor, and the box that the product came in. Neither source disclosed the existence of the defect. The fact that the biometric lock on the gun safe is defective is material to Mr. Hamilton. If the product packaging, store personnel, or Cabela's websites had disclosed the defect, then Mr. Hamilton would not have purchased the gun safe, or would not have

purchased it on the same terms.  Mr. Hamilton has experienced the defect at issue in this case—namely, he programed the biometric feature when in fact the safe remained in the open mode.

10. Defendant Xpedition LLC dba Fortress Safe is an Illinois company with its principal place of business and headquarters in Chicago, Illinois.  Defendant Xpedition designed, developed, manufactured, warranted, and monitored the performance of all of the gun safe products at issue here.

11. Defendant Cabela's LLC is a Delaware corporation with its principal place of business and headquarters in Springfield, Missouri.  Cabela's owns and operates two retail stores with both a brick-and-mortar and online presence, called Cabela's and Bass Pro Shops.  With respect to Cabela's-branded gun safes and any other Fortress Safe gun safes sold at its stores, Defendant Cabela's was responsible for advertising, warranties, dissemination of owner's manuals and other consumer-facing documents, customer service, and monitoring performance of the products in the United States.  Plaintiff asserts claims against Defendant Cabela's only with respect to gun safes sold at Cabela's or Bass Pro Shops.

12. At all relevant times, the Defendants acted as agents of the other, working in conjunction to sell the products to Cabela's customers.  All product packaging and consumer disclosures (as well as omissions contained in those disclosures) were approved by both Defendants.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from Defendant.

14. This Court has personal jurisdiction over Defendants because each of them conducts substantial business in California.  A substantial portion of the events giving rise to the claims alleged here occurred in this state.

15. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## FACTUAL ALLEGATIONS

16. **Product at issue:** the gun safes at issue in this case are portable lock boxes, personal safes, pistol vaults and gun cabinets with brand names Fortress, Cabela's, Gettysburg, and Legend Range & Field:

| Model # | Description |
|---|---|
| 11B20 | Fortress Portable Safe with Biometric Lock |
| 44B10 | Fortress Personal Safe with Pop up door and Biometric Lock |
| 44B10L | Legend Range & Field Personal Safe with Pop up door and Biometric Lock |
| 44B20 | Fortress Medium Personal Safe with Biometric Lock |
| 55B20 | Fortress Quick Access Safe with Biometric Lock |
| 55B30 | Fortress Large Quick Access Safe with Biometric Lock |
| 55B30G | Gettysburg Large Quick Access Safe with Biometric Lock |
| 4BGGBP | Cabela's 4 Gun Safe with Biometric Lock |
| 55B30BP | Cabela's Biometric Personal Safe |

17. **Defect at issue:** As stated by Defendant Fortress Safe, "the safes contain a biometric reader that allows unpaired fingerprints to open the safe until a fingerprint is programmed, allowing unauthorized persons, including children, to access hazardous contents, including firearms."

18. Defendant Cabela's similarly describes the defect to its customers as follows:

> Hazard: The biometric lock on the gun safes can be opened by unauthorized users, posing a serious injury hazard and risk of death. Consumers may believe they have properly programmed the biometric feature when in fact the safe remains in the default to open mode, which can allow unauthorized users, including children, to access the safe to remove hazardous contents, including firearms.

19. The defect affects all of the products at issue. Defendants have instructed consumers to "stop using the product immediately" regardless of whether their particular product "appears to be ok."

20. The cause of the defect is the same for all of the products at issue.

21. **Relevant time period:** All of the omissions at issue here were uniformly and consistently made at all times during the last four years, at least. There have been no material changes to the product packaging or other consumer facing materials during the relevant period.

22. **The omissions:** Defendants described the products as biometric gun safes. However, they failed to disclose that due to a defect in the materials, workmanship, and/or design, the safe was prone to remain accessible to non-authorized people even after the biometric feature was properly set up.

23. The omission pertains to an unreasonable safety hazard that reasonable consumers consider to be material.

24. Plaintiff and class members would not have bought the gun safes, or would not have bought them on the same terms, if the defect had been disclosed. The materiality of the defect also is demonstrated by the existence of the recall.

25. Defendants did not disclose the defect on the product packaging, the product page of their respective websites, the owner's manual, or in any other customer-facing document. Sales personnel and customer service representatives did not disclose the defect.

26. At the time of purchase, Plaintiff and class members did not know and did not have reason to know that the gun safes were defective. Defendants had exclusive knowledge of that fact.

27. Defendant made partial representations to Plaintiff and class members, while suppressing the safety defect. Specifically, by displaying the gun safes and describing their biometric lock features, the product packaging and product webpages implied that they were suitable as gun safes, without disclosing that they had a critical safety-related defect related to the biometric lock. The products themselves also conveyed the impression that they had

biometric functionality, because the biometric lock is clearly visible on the front of the products. However, there was no disclosure that the biometric lock was defective.

28. **Defendants Pre-sale Knowledge of the Defect:**

29. Defendants were aware of the defect at the time of sale, and in no event later than Spring 2022.

30. Before the products were first launched, Defendants knew about the defect as a result of pre-release testing.

31. After launch, Defendants monitored a variety of sources of information to detect signs of defects. These sources of information include warranty claim data, customer complaints to Defendants, replacement part data, and field reports. Defendants know that for every complaint made, there is a statistical likelihood that there were many more unreported incidents, and Defendants make projections about the likely manifestation rate and future warranty claims based on the number of known complaints.

32. The customer complaints about the gun safes also would have put Defendants on notice of the defect and contributed to their pre-sale knowledge of the defect, because the defect is the same or substantially similar in all material respects. The number of complaints about the biometric lock was unusually high relative to the total number of products sold. The fact that so many owners made similar complaints indicated that the complaints were not the result of user error or anomalous incidents, but instead a systemic problem with the gun safes. The reports and complaints from owners were similar enough to put Defendants on notice that the incidents described were the result of a defect, and that the gun safes were experiencing unusually high levels of complaints about the biometric locks.

33. Defendants also monitored and would have known about consumer complaints to the CPSC. When a consumer posts a complaint on the CPSC website, all of the relevant information provided to the CPSC is automatically sent via email to the manufacturer and retailers. Monitoring complaints to the CPSC is standard industry practice that serves as an early warning mechanism to spot defects that cause safety hazards, and Defendants adhere to that practice.

34. **Presuit notice**: On June 18, 2024, Plaintiff provided pre-suit notice via certified mail in a letter that complied with all applicable notice requirements. Defendant Xpedition received that notice on June 21, 2024, and Defendant Cabela's received notice on June 24, 2024.

35. **No Adequate Remedy At Law:** Plaintiff and members of the Class are entitled to equitable relief because no adequate remedy at law exists.

36. Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.

37. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fail to sufficiently adduce evidence to support an award of damages.

38. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiff seeks non-restitutionary disgorgement of profits in connection with his unjust enrichment claim.

39. Legal claims for damages are not equally certain as restitution because equitable claims entail few elements.

40. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

41. **The Recall Does Not Render This Lawsuit Moot**:

42. The recall does not render this lawsuit moot because it does not provide all of the same relief available in this lawsuit.

43. Under the recall, Defendants will only provide an alternative biometric safe made by Fortress Safe. No refunds are provided. However, that option is not viable for people like Plaintiff who either no longer trust the reliability of biometric safes in general, or of Fortress Safe's products specifically.

44. The CLRA provides that "in no case shall the total award of damages in a class action be less than one thousand dollars ($1,000)." Cal. Civ. Code § 1780(a)(1). That is more than the provided for under the recall.

45. The recall was only briefly publicized and in a very limited manner. Therefore, on information and belief, many eligible class members remain unaware of it, and the response rate has been low. The amount and reach of the publicity concerning the notice of recall was not comparable to the typical notice provided in a class action.

## CLASS ALLEGATIONS

46. ***Class Definition***: Plaintiff brings this action on behalf all people the following classes and subclasses:

> <u>Nationwide class</u>: all people in the United States who purchased a subject gun safe.
>
> <u>Multi-State Implied Warranty Class (against Cabela's only)</u>: All persons who purchased a subject gun safe from Cabela's for personal, family, or household use: (1) in Alaska, Arkansas, California, Delaware, District of Columbia, Hawaii, Indiana, Kansas, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, or Wyoming within the applicable statute of limitations; or (2) in Colorado or Massachusetts within the applicable statute of limitations.
>
> <u>Multi-State Consumer Protection Class</u>: All persons who purchased a subject gun safe for personal, family, or household use: (1) in the states of Michigan, Minnesota, or New Jersey within the applicable statute of limitations; (2) in the state Missouri within the applicable statute of limitations; (3) in the states of California, Florida, Massachusetts, or Washington within the applicable statute of limitations; (4) in the states of Illinois and New York within the applicable statute of limitations.
>
> <u>California class</u>: all people who purchased or leased a subject gun safe in California.

47. Each of the above class definitions is a placeholder that "may be altered or amended before final judgment." Fed. Civ. P. 23(c)(1)(C). Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

48. Excluded from the putative classes are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family. Also excluded are any claims for personal injury.

49. **_Numerosity._** Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to the Plaintiff at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants or other means.

50. **_Commonality and Predominance._** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

 (a) Whether Defendants knew or should have known of the defect at issue in this case, and if so, when they discovered the defect;

 (b) Whether knowledge of the defect at issue in this case would be important to a reasonable person, because, among other things, it poses an unreasonable safety hazard;

 (c) Whether Defendants failed to disclose and concealed the existence of the defect from potential customers;

 (d) Whether Defendants' conduct, as alleged herein, violates the consumer protection laws asserted here;

51. **_Typicality._** Plaintiff's claims are typical of the claims of the Classes in that Plaintiff and the Classes sustained damages as a result of Defendants' uniform wrongful conduct, based upon Defendants' failure to inform Plaintiff and all others similarly situated that the products at issue here can be dangerous.

52. **_Adequacy_**. Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel that is highly experienced in complex consumer class

action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that are antagonistic to those of the Class. Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

53. **Superiority**. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

54. Without a class action, Defendants will continue a course of action that will result in further damages to the Plaintiff and Members of the Classes and will likely retain the benefits of its wrongdoing.

**COUNT I**
**Violations of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

55. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

56. Plaintiff brings this cause of action individually and on behalf all other class members.

57. California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

58. Defendants acted with knowledge and intent.

59. Plaintiff alleges a claim under all three prongs of the UCL.

60. As alleged above, Defendant engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

61. Defendants' conduct also constitutes "unfair" business acts and practices within

the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Defendants' violation of consumer protection and unfair competition laws resulted in harm to consumers.

62. Plaintiff also alleges a violation under the "unlawful" prong of the UCL because Defendant's conduct violated consumer protection laws and the common law as set forth herein.

63. As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiff and the other members of the Class have suffered out-of-pocket losses.

64. Plaintiff and class members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.

65. Plaintiff seeks all relief available under the UCL.

**COUNT II**
**Violations of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***

66. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

67. Plaintiff brings this cause of action individually and on behalf all other class members.

68. Each Defendant is a "person" as defined by California Civil Code § 1761(c).

69. Plaintiff and the other Class members are "consumers" within the meaning of California Civil Code § 1761(d).

70. For the reasons alleged above, Defendants violated California Civil Code § 1770(a)(5)(7) and (9).

71. Plaintiff provided pre-suit notice of the claims asserted under the CLRA, in compliance with all of the CLRA's requirements.

72. Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business.

73. Defendant acted with knowledge and intent.

74. Defendant engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

75. With respect to restitution under the CLRA claim, Plaintiff allege in the alternative that they lack an adequate remedy at law for the reasons already alleged above.

76. As a result of Defendants' misconduct, Plaintiff and other Class members have suffered monetary harm.

77. Plaintiff seeks all relief available under this cause of action.

## COUNT III
**Violation of Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq*.**

78. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

79. Plaintiff brings this cause of action individually and on behalf all other class members.

80. The gun safes are "consumer goods" and Plaintiff and class members are "buyers" within the meaning of Cal. Civ. Code § 1791.

81. Each Defendant is a "manufacturer," "distributor," and/or "retail seller" under Cal. Civ. Code § 1791.

82. The implied warranty of merchantability included with the sale of each gun safe means that Defendants warranted that each gun safe (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the gun safe would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

83. The gun safes would not pass without objection in the trade because they contain the above-described defect, which also makes them unfit for the ordinary purpose for which they would be used.

84. The products are not adequately labeled because their labeling fails to disclose the defect and does not advise class members of the existence of the danger prior to experiencing failure firsthand.

85. The gun safes were not sold on an "as is" or "with all faults" basis.

86. Any purported disclaimer of implied warranties was ineffective because it was not conspicuous and not made available to the purchaser before the sale of the product. Instead, if a disclaimer was made at all, it was buried in an owner's manual, which was tucked away in the product packaging and not made available until after purchase.

87. Defendants' actions have deprived Plaintiff and class members of the benefit of their bargains and have caused the gun safes to be worth less than what Plaintiff and other class members paid.

88. As a direct and proximate result of the breach of implied warranty, class members received goods whose condition substantially impairs their value. Class members have been damaged by the diminished value of their gun safes.

89. Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff and class members are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of the gun safes or the overpayment or diminution in value of their products. They are also entitled to all incidental and consequential damages resulting from the breach, as well as reasonable attorneys' fees and costs.

90. Plaintiff seeks all relief available under this cause of action.

## COUNT IV
### Breach of Implied Warranty

91. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

92. Plaintiff brings this cause of action individually and on behalf all other class members.

93. Defendants, as the designer, manufacturer, marketer, distributor, and/or seller of the products at issue, impliedly warranted that they would pass without objection in trade under the contract description; was fit for the ordinary purpose for which the products would be used; and conformed to the promises or affirmations of fact made on the container or label.

94. Defendants breached its warranty implied because the products could not pass without objection in the trade under the contract description, they were not adequately labeled because there was no disclosure of the defect at issue; and they are unfit for their ordinary purpose. As a result, Plaintiff and members of the Classes did not receive the goods as impliedly warranted by Defendants to be merchantable.

95. Plaintiff and Members of the Classes purchased the products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

96. The products were defective when it left the exclusive control of Defendant.

97. Plaintiff and class members did not receive the goods as warranted.

98. The gun safes were not sold on an "as is" or "with all faults" basis.

99. Any purported disclaimer of implied warranties was ineffective because it was not conspicuous and not made available to the purchaser before the sale of the product. Instead, if a disclaimer was made at all, it was buried in an owner's manual, which was tucked away in the product packaging and not made available until after purchase.

100. As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and class members have been injured and harmed because: (a) they would not have purchased the products on the same terms if they knew that the Product was dangerous; and (b) the Product does not have the characteristics, uses, or benefits as promised by Defendants.

101. Plaintiff seeks all relief available under this cause of action.

## COUNT V
**Unjust Enrichment**

102. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

103. Plaintiff brings this cause of action individually and on behalf all other class members.

104. To the extent required, Plaintiff asserts this cause of action in the alternative to legal claims, as permitted by Rule 8.

105. The unjust enrichment claims are premised on Defendants' pre-sale activities and are unrelated to their post-sale obligations to provide repairs.

106. Plaintiff and the class members conferred a benefit on Defendants in the form of the gross revenues Defendants derived from the money they paid to Defendant.

107. Defendants knew of the benefit conferred on it by Plaintiff and the Class Members.

108. Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class Members' purchases of the products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the products were dangerous. This caused injuries to Plaintiff and class members because they would not have purchased the products or would have paid less for them if the true facts concerning the products had been known.

109. Defendants accepted and retained the benefit in the amount of the gross revenues it derived from sales of the products.

110. Defendants have profited by retaining the benefit under circumstances which would make it unjust for Defendants to retain the benefit.

111. Plaintiff and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendants' sale of the gun safes.

112. As a direct and proximate result of Defendants' actions, Plaintiff and class members have suffered in an amount to be proven at trial.

113. Putative class members have suffered an injury in fact and have lost money as a result of Defendants' unjust conduct.

114. Putative class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a. For an order certifying the classes alleged in this complaint, and naming Plaintiff as the representatives of those classes;

b. For an order declaring Defendants' conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiff and class members on all counts asserted herein;

d. For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For an order awarding Plaintiff and class members their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated:  August 12, 2024                                    Respectfully submitted,

                                                           /s/    Joel D. Smith

                                                           **SMITH KRIVOSHEY, PC**
                                                           Joel D. Smith (State Bar No. 244902)
                                                           867 Boylston Street,
                                                           5th Floor, Ste. 1520
                                                           Boston, MA 02116
                                                           Phone: 617-377-7404
                                                           E-Mail:  joel@skclassactions.com

                                                           **SMITH KRIVOSHEY, PC**
                                                           Yeremey O. Krivoshey
                                                           (State Bar No. 295032)
                                                           166 Geary Street, Ste. 1500-1507
                                                           San Francisco, CA 94108
                                                           Phone: 415-839-7000
                                                           E-Mail:  yeremey@skclassactions.com

                                                           *Attorneys for Plaintiff*

**CLRA Venue Declaration, Civil Code § 1780(c)**

I, Joel D. Smith, declare as follows:

2. I have personal knowledge to the facts stated herein and, if called upon to do so, could competently testify hereto.

3. I am the attorney for Plaintiff in the above-captioned action.

4. I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq*.

5. The Class Action Complaint has been filed in the proper place for trial of this action.

6. It is my understanding that Defendants regularly transacts business in this County, and the acts and omissions giving rise to this action occurred in large part in this County.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge. Executed on August 12, 2024 in Danielson, CT.

> By:   /s/ Joel D. Smith
>           Joel D. Smith