1

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)

2

166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108

3

Phone: 415-839-7000
E-Mail:  yeremey@skclassactions.com

4

5

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)

6

867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404

7

E-Mail:  joel@skclassactions.com

8

*Attorneys for Plaintiff*

9

10

**UNITED STATES DISTRICT COURT**

11

**EASTERN DISTRICT OF CALIFORNIA**

12

13

RUSS HAMILTON, individually and on behalf
of all others similarly situated,

14

15

                                   Plaintiff,

v.

16

17

XPEDITION LLC dba FORTRESS SAFE and
CABELA'S LLC

18

                                   Defendants.

19

20

Case No. 2:24-cv-02157-KJM-CSK

**OPPOSITION TO MOTION TO DISMISS**

DATE:        JANUARY 23, 2025
TIME:        10:00 A.M.
LOCATION:  Courtroom 3, 15TH floor

21

22

23

24

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...........................................................................................1

II.   ARGUMENT .................................................................................................2

    A.    Defendants' Recall Does Not Provide All The Relief That Plaintiff
          Could Obtain Through Litigation ...................................................................2

    B.    Plaintiff Sufficiently Alleges A Cause Of Action Under the UCL ...........................6

          1.    Defendants' Arguments Concerning *Sonner* Contradict
                  Decisions Of This Court....................................................................6

          2.    Defendants Offer No Independent Basis To Dismiss The
                  UCL Claim Under The Unlawful Prong ...........................................7

          3.    Plaintiff Sufficiently Alleges A Cause Of Action Under The
                  UCL's Fraud Prong .........................................................................7

               a.  Plaintiff Sufficiently Alleges A Duty To Disclose .................................7

               b.  *Rattagan* Does Not Support Dismissal........................................9

               c.  Defendants' Remaining Arguments Are Undeveloped And
                   Lack Merit .................................................................................11

          4.    Plaintiff Sufficiently Alleges A Cause Of Action Under The
                  UCL's Unfair Prong .......................................................................12

    C.    Plaintiff Sufficiently Alleges A Cause Of Action Under the CLRA.......................14

          1.    Defendants' Own Authority Contradicts Defendants'
                   Argument Concerning § 1782(b)........................................................14

          2.    The Allegations Satisfy Rule 9(b) ...................................................16

    D.    Plaintiff Sufficiently Alleges A Cause Of Action For Breach of
          Implied Warranty...................................................................................17

    E.    Plaintiff Sufficiently Alleges A Cause Of Action For Unjust
          Enrichment ...........................................................................................18

III.  CONCLUSION ...........................................................................................20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*,
  2020 WL 3893395 (E.D. Cal. July 10, 2020) ............................................................... 6

*Am. Life Ins. Co. v. Stewart*,
  300 U.S. 203 (1937) ...................................................................................................... 7

*Ashgari v. Volkswagen Grp. of Am., Inc.*,
  42 F. Supp. 3d 1306 (C.D. Cal. 2013) ........................................................................ 16

*Badgley v. U.S.*,
  957 F.3d 969 (9th Cir. 2020) ...................................................................................... 11

*California Gasoline Spot Mkt. Antitrust Litig.*,
  2021 WL 1176645 (N.D. Cal. Mar. 29, 2021) ...................................................... 18, 19

*Cel-Tech Comms., Inc. v. LA Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ................................................................................................ 13

*Chen v. Allstate Ins. Co.*,
  819 F.3d 1136 (9th Cir. 2016) ...................................................................................... 4

*Cheng v. BMW of N. Am., LLC*,
  2013 WL 3940815 (C.D. Cal. 2013) ............................................................................. 4

*Comes v. Harbor Freight Tools USA, Inc.*,
  2021 WL 6618816 (C.D. Cal. Sept 29, 2021) ............................................................... 4

*Copart, Inc. v. Sparta Consulting, Inc.*,
  2015 WL 3622618 (E.D. Cal. June 9, 2015) ............................................................... 19

*Cross v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
  2019 WL 6496838 (E.D. Cal. Dec. 3, 2019) ............................................................... 19

*Daugherty v. Am. Honda Motor Co.*,
  51 Cal. Rptr. 3d 118 (2006) ........................................................................................ 10

*Edwards v. Ford Motor Co.*,
  603 Fed. Appx. 538 (9th Cir. 2015) ............................................................................ 10

*Elgindy v. AGA Service Co.*,
  2021 WL 1176535 (N.D. Cal. Mar. 29, 2021) .............................................................. 7

*Espineli v. Toyota Motor Sales U.S.A., Inc.*,
    2018 WL 3769383 (E.D. Cal. Aug. 9, 2018) ................................................................ 6

*Friedman v. AARP, Inc.*,
    855 F.3d 1047 (9th Cir. 2017) ................................................................................... 10

*Garcia v. Gateway Hotel L.P.*,
    82 F.4th 750 (9th Cir. 2023) ...................................................................................... 10

*Graham v. Bank of Am., N.A.*,
    226 Cal. App. 4th 594 (2014) .............................................................................. 12, 13

*Guzman v. Polaris Indus., Inc.*,
    49 F.4th 1308 (9th Cir. 2022) .................................................................................... 20

*Hodson v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) .................................................................................. 8, 13

*In re Big Heart Pet Brands Litig.*,
    2019 WL 8266869 (N.D. Cal. Oct. 4, 2019) ......................................................... 3, 4, 5

*In re C.H.*,
    53 Cal. 4th 94 (2011) ................................................................................................. 15

*In re Flash Memory Antitrust Litig*,
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) ..................................................................... 15

*In re MacBook Keyboard Litig.*,
    2019 WL 6465285 (N.D. Cal. Dec. 2, 2019) ............................................................ 3, 5

*In re Mattel, Inc.*,
    588 F. Supp. 2d 1111 (C.D. Cal. 2008) ....................................................................... 3

*In re Toyota Motor Corp. Hybrid Brake Mktg. Sales Pracs & Prod. Liab. Litig.*,
    890 F.Supp.2d 1210 (C.D. Cal. 2011) ......................................................... 4, 14, 15, 18

*Kaupelis v. Harbor Freight Tools USA, Inc.*,
    2019 WL 6998661 (C.D. Cal. Oct. 9, 2019) ................................................................. 3

*Kaupelis v. Harbor Freight Tools USA, Inc.*,
    2022 WL 2288895 (C.D. Cal. Jan. 12, 2022) ............................................................... 2

*Krueger v. Wyeth, Inc.*,
    396 F. Supp. 3d 931 (S.D. Cal. 2019) ........................................................................ 15

*Kulp v. Munchkin, Inc.*,
    678 F. Supp. 2d 1158 (C.D. Cal. 2023) ....................................................................... 9

*Langille v. Berthel, Fisher & Co. Fin. Servs, Inc.*,
   2020 WL 3961959 (E.D. Cal. July 13, 2020) ............................................................ 16

*Lindstrom v. Polaris Inc.*,
   2024 WL 4275619 (D. Mont. Sep. 24, 2024) ............................................................ 3

*Lingle v. Centimark Corp.*,
   2023 WL 2976376 (E.D. Cal. Apr. 17, 2023) ............................................................ 7

*Long v. Graco Children's Prod. Inc.*,
   2014 WL 7204652 (N.D. Cal. Dec. 17, 2014) ............................................................ 5

*Lund v. Datzman*,
   2024 WL 4267889 (E.D. Cal. Sept. 23, 2024) ............................................................ 15

*M.O. Dion & Sons, Inc. v. VP Racing Fuels, Inc.*,
   2022 WL 18281526 (C.D. Cal. Nov. 2, 2022) ............................................................ 7

*McKell v. Wash. Mut. Inc.*,
   142 Cal. App. 4th 1457 (2006) ............................................................ 13

*Molsbergen v. United States*,
   757 F.2d 1016 (9th Cir. 1985) ............................................................ 6

*Morgan v. AT&T Wireless Servs. Inc.*,
   177 Cal. App. 4th 1235 (2009) ............................................................ 12

*Morgan v. Harmonix Music Sys., Inc.*,
   2009 WL 2031765 (N.D. Cal. July 7, 2009) ............................................................ 10

*Moyle v. Liberty Mut. Retirement Ben. Plan.*,
   823 F.3d 948 (9th Cir. 2016) ............................................................ 6

*Obertman v. Electrolux Home Care Prods., Inc.*,
   482 F. Supp. 3d 1017 (E.D. Cal. 2020) ............................................................ Passim

*Pecanha v. The Hain Celestial Grp., Inc.*,
   2018 WL 534299 (N.D. Cal. Jan. 24, 2018) ............................................................ 19

*Pelletier v. Pacific WebWorks, Inc.*,
   2012 WL 43281 (E.D. Cal. Jan. 9, 2012) ............................................................ 16

*People v. Morgan*,
   103 Cal. App. 5th 488 (2024) ............................................................ 15

*Philips v. Ford Motor Co.*,
   2016 WL 693283 (N.D. Cal. Feb. 22, 2016) ............................................................ 3, 4

*Postier v. Louisiana-Pac Corp.*,
2009 WL 3320470 (N.D. Cal. Oct. 13, 2009) ................................................................. 15

*Power Quality & Elec. Sys., Inc. v. BP W. Coast Prods LLC*,
2017 WL 119041 (N.D. Cal. Jan. 12, 2017) ................................................................... 12

*Rattagan v. Uber Techs., Inc.*,
17 Cal. 5th 1 (Cal. 2024) ...................................................................................... 9, 10, 11

*Reguero v. FCA US, LLC*,
671 F. Supp. 3d 1085 (C.D. Cal. 2023) ..................................................................... 13, 14

*Rice v. Kimberly-Clark Corp.*,
2022 WL 16804522 (E.D. Cal. Nov. 8, 2022) ......................................................... Passim

*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017) ................................................................................... 20

*San Francisco Unified School Dist. v. W.R. Grace & Co.*,
37 Cal. App. 4th 1318 (1995) ......................................................................................... 10

*Shin v. BMW of Am.*,
2009 WL 2163509 (C.D. Cal. July 16, 2009) ................................................................. 13

*Torres v. Botanic Tonics, LLC*,
709 F. Supp. 3d 856 (N.D. Cal. 2023) ....................................................................... 13, 14

*Tosh-Surryhne v. Abbot Lab'ys Inc.*,
2011 WL 4500880 (E.D. Cal. Sept. 27, 2011) ............................................................. 4, 5

*Vance v. Church & Dwight Co., Inc.*,
2023 WL 2696826 (E.D. Cal. Mar. 29, 2023) ........................................................... 18, 19

*Warnshuis v. Bausch Health U.S., LLC*,
2020 WL 3294808 (E.D. Cal. June 18, 2020) ................................................................. 18

*Wilens v. TD Waterhouse Grp., Inc.*,
120 Cal. App. 4th 746 (2003) ......................................................................................... 15

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ................................................................................. 10, 11

*Winzler v. Toyota Motor Sales, U.S.A., Inc.*,
681 F.3d 1208 (10th Cir. 2012) ....................................................................................... 4

**Statutes**

Cal. Civ. Code § 1760 ...................................................................................................... 15

Cal. Civ. Code § 1780(a) ................................................................................................ 4, 15

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................ 8, 12, 16

**Regulations**

16 C.F.R. § 1115.20(a) ................................................................................................ 1, 2

**Other Authorities**

H.R. 4040, 110th Cong. § 231(a) (2008) ................................................................................................ 2

## I.      INTRODUCTION

This is a case about gun safety.  In the last two years, there have been industry-wide recalls of nearly a quarter million biometric gun safes.  Complaint, ¶¶ 1-2.  The first recall involved Defendants' gun safes—the same products at issue here—after the death of a 12-year boy.  *Id.* at ¶ 2.  The Commissioner of the Consumer Product Safey Commission ("CPSC") described the issues with Defendants' products as a "nightmare scenario" and "the most concerning recall that's ever come across my desk."  *Id.*  Defendants admitted—and continue to do so today—that the gun safes "pose[] a serious injury hazard and risk of death," and that customers should "stop using the product immediately," even if it "appears to be ok."  *Id.* at ¶¶ 3, 18-19.  The problems with biometric gun safes have been so systemic, and so industry-wide, that the CPSC's Commissioner cautioned: "At this point, I can understand how it would be hard to trust the safety of biometric gun safes, in general.  Don't be surprised if there are more biometric gun safe recalls coming."  *Id.* at ¶ 4.

Defendants' primary argument is that this lawsuit is barred by their recall, which provides only another biometric gun safe, but no refunds.  Plaintiff and class members had no say over the terms of the recall.  So, the central question here is whether a company can avoid liability by issuing a recall with limited relief.  The answer to that question, is "no."

By regulation, a CPSC recall "has no legally binding effect" and cannot preclude lawsuits that seek remedies beyond what is provided by the recall.  *See* 16 C.F.R. § 1115.20(a). Defendants admit in their brief that the Court can only dismiss Plaintiff's claims if Defendants' recall provides "***all*** of the relief [he] could receive on the claim through further litigation." MTD, 9:6-7 (emphasis added).  Defendants' recall does not do that.  It does not provide actual damages, punitive damages, restitution, or statutory damages—all of which are sought here. This lawsuit therefore is not moot.  What is more, class actions like this one have survived the

pleadings, been certified, and gone on to obtain greater relief to customers than what the

defendants had initially provided in a voluntary recall.  *See Kaupelis v. Harbor Freight Tools*

*USA, Inc.*, 2022 WL 2288895 (C.D. Cal. Jan. 12, 2022) (granting final approval of settlement

where plaintiffs alleged that defendant initiated an inadequate CPSC recall); *Payero v. Mattress*

*Firm*, S.D.N.Y. Case No. 7:21-cv-03061-VB, Aug. 16, 2023 Order Granting Final Approval of

Settlement, ECF No. 88 (same).  Defendants' remaining arguments for dismissal are largely

perfunctory, frequently contradicted by their own authorities, and consistently ignore the

allegations in the Complaint.  The Court should deny the motion to dismiss.

## II.    ARGUMENT

### A.    Defendants' Recall Does Not Provide All The Relief That Plaintiff Could Obtain Through Litigation

Based on its voluntary recall with the CPSC, Defendants argue "[t]his case cries out for

application of the prudential mootness doctrine." MTD, 12:11-2.  That is wrong for three

reasons.  <u>First</u>, as a general matter, CPSC-related recalls do not preclude litigation by

consumers.  Under 16 C.F.R. § 1115.20(a), a voluntary "corrective action plan" (aka a recall or

"remedial action"), "**has no legally binding effect**."  16 C.F.R. § 1115.20(a) (emphasis added).[1]

When Congress passed the Consumer Product Safety Improvement Act of 2006, it clarified that

"[i]n accordance with the provisions of [the CPSA], the [CPSC] may not construe any such Act

as preempting any cause of action under State or local common law or State statutory law

regarding damage claims*."*  H.R. 4040, 110th Cong. § 231(a) (2008).  Accordingly, numerous

courts have rejected the argument that a voluntary recall with the CPSC bars lawsuits by

---

[1] 16 C.F.R. § 1115.20(a) states in full: "A corrective action plan is a document, signed by a subject firm, which sets forth the remedial action which the firm will voluntarily undertake to protect the public, but which has no legally binding effect. The Commission reserves the right to seek broader corrective action if it becomes aware of new facts or if the corrective action plan does not sufficiently protect the public."

affected consumers.  *See In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1115 (C.D. Cal. 2008) ("*In re Mattel*") (holding that a "voluntary product replacement pursuant to [CPSC] regulations does not bar a state law refund remedy") (cleaned up); *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2019 WL 6998661, at *10 (C.D. Cal. Oct. 9, 2019) (following *In re Mattel* when holding voluntary CPSC recall did not support dismissal).

Second, if a recall truly provides all the relief that would otherwise be available in litigation, then the prudential mootness doctrine might apply.  However, Defendants' own authorities held that a lawsuit is not moot when the plaintiff seeks monetary relief that is unavailable under a recall or other voluntary remedy.  *See In re MacBook Keyboard Litig.*, 2019 WL 6465285, at *8 (N.D. Cal. Dec. 2, 2019) ("the [free service program] does not moot Plaintiffs' claims because Plaintiffs seek relief beyond what the Program offers, including monetary damages ….") ("*In re MacBook*"); *Philips v. Ford Motor Co.*, 2016 WL 693283 at *7 (N.D. Cal. Feb. 22, 2016) ("the relief that California Plaintiffs seek and the relief that Ford has provided under the recall are not one and the same").[2]  The same is true where, as here, the plaintiff seeks punitive damages.  *See, e.g.*, *In re Big Heart Pet Brands Litig.*, 2019 WL 8266869, at *5 (N.D. Cal. Oct. 4, 2019) ("*In re Big Heart*") (recall did not moot plaintiffs' claims, in part because they sought punitive damages).  As another court explained, if the mere existence of a recall could bar claims regardless of the scope of the remedy, then it "would essentially allow [corporations] to choose their own remedy to a CPSA violation with no guarantee for input from harmed parties …."  *In re Mattel*, 588 F. Supp. 2d at 1115.

Here, Defendants say it best when they argue that mootness turns on whether their recall provides "**all** of the relief [a plaintiff] could receive on the claim through further litigation."

---

[2] *See also Lindstrom v. Polaris Inc.*, 2024 WL 4275619, at *2-3 (D. Mont. Sep. 24, 2024) (recall did not moot plaintiffs' claim despite CPSC recall providing for free replacement, an extended warranty, and a $250 voucher).

MTD, 9:6-7 (emphasis added).  However, the problem with Defendants' argument is that they assume, incorrectly, that the only relief that Plaintiff could receive through further litigation is another biometric gun safe.  The Complaint contains an entire section alleging that the "Recall Does Not Render This Lawsuit Moot" (Complaint, ¶¶ 41-45), because, among other reasons, "[n]o refunds are provided" under the recall (*id.* at ¶ 43), whereas this action seeks monetary relief.  And, as was the case in *In re Big Heart*, Plaintiff also seeks punitive damages, which are likewise unavailable under the recall.  *See* Complaint, Prayer for Relief; *In re Big Heart*, 2019 WL 8266869, at *5.  Similarly, the CLRA imposes a minimum of $1,000 damages in class actions, which again, is unavailable under the recall.  *Id.* at ¶ 44; *see also* Cal. Civ. Code § 1780(a)(1).

Third, almost every case that Defendants cite is distinguishable because unlike here, either the defendant provided a refund,[3] or the plaintiff sought only injunctive relief that was duplicative of an existing recall.[4]  Other decisions Defendants cite rejected the same or similar argument Defendants make here, and denied dismissal because—like here—the plaintiffs sought relief beyond what was available under the recall or other voluntary remedy.[5]

This Court's decision in *Tosh-Surryhne*, 2011 WL 4500880 at *5, cited by Defendants, aptly illustrates the rule and supports Plaintiff's position.  Defendants say that in *Tosh-Surryhne*,

---

[3] *Comes v. Harbor Freight Tools USA, Inc.* 2021 WL 6618816 *5 (C.D. Cal. Sept 29, 2021) (granting motion with leave to amend where, unlike here, the defendant offered "a full cash refund"); *Tosh-Surryhne v. Abbot Lab'ys Inc.*, 2011 WL 4500880 at *5 (E.D. Cal. Sept. 27, 2011) (Mueller, J.) (describing "full refund" made available under the subject recall).

[4] *Cheng v. BMW of N. Am., LLC*, 2013 WL 3940815 at *4 (C.D. Cal. 2013) (citing allegation in complaint where plaintiff disclaimed "any monetary damages"); *Winzler v. Toyota Motor Sales, U.S.A., Inc.*, 681 F.3d 1208, 1209 (10th Cir. 2012) (describing injunctive relief sought by plaintiff); *see also In re Big Heart*, 2019 WL 8266869 at *6 (distinguishing *Cheng* and *Winzler*, in part because the plaintiffs in those cases "did not seek damages or other monetary relief").

[5] *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1144 (9th Cir. 2016) ("Pacleb's individual claims for damages and injunctive relief are not now moot."); *Philips*, 2016 WL 693283 at *10¬11 (recall did not render lawsuit moot because plaintiffs sought damages and other relief).

this Court held that a "defendant's offer of [a] replacement product mooted [an] unjust

enrichment claim," and "reject[ed] [a] claim demanding [a] refund rather than [a] replacement

offered through [a] recall program."  MTD, at 9:21-22; 11:5-6 (discussing *Tosh-Surryhne*).  That

is a strikingly inaccurate description of *Tosh-Surryhne*.  The truth is, this Court's order detailed

at length how the defendant in *Tosh-Surryhne* offered a "full refund," with replacement units

appearing to be supplementary to monetary relief:

> Defendant announced its … **offers of full refunds** beginning on September 23,
> 2010.  Purchasers of recalled product who submitted recall forms on defendant's
> website or through defendant's hotline were sent a kit for returning the recalled
> product to defendant, which included $15.00 coupons toward future purchases.
> Thus, customers who could prove they had purchased recalled product **received
> both reimbursement checks and $15.00 coupons**.  Where customers complained
> to defendant that the reimbursement they received was less than the retail price
> they paid, **defendant provided them with the difference**.  Furthermore,
> **defendant reimbursed customers who had receipts for recalled product but
> not the containers, for up to three units of product**.  Where such customers also
> claimed that their children experienced physical symptoms due to the recalled
> product, **defendant offered the reimbursement for up to three units of product**,
> in addition to up to two complimentary cases (with six containers in each) of that
> product and a coupon toward the purchase of a future Similac product.

*Tosh-Surryhne*, 2011 WL 4500880 at *4 (emphasis added).  The recall in *Tosh-Surryhne* bears

little resemblance to the recall here, and Defendants are mistaken when they imply that the mere

offer of a replacement product in *Tosh-Surryhne* was enough to support dismissal.  Several

courts have distinguished *Tosh-Surryhne* and denied dismissal, where—like here—the

defendant's voluntary recall or other remedial measures involved no refunds.  *Long v. Graco

Children's Prod. Inc.*, 2014 WL 7204652, at *4 (N.D. Cal. Dec. 17, 2014) (distinguishing *Tosh-

Surryhne* because there was "clear evidence of actual payment or an actual offer of full

refunds."); *In re Big Heart*, 2019 WL 8266869 at *4 (distinguishing *Tosh-Surryhne* for the same

reason); *In re MacBook*, 2019 WL 6465285, at *8 (same).

**B.      Plaintiff Sufficiently Alleges A Cause Of Action Under the UCL**

**1.      Defendants' Arguments Concerning *Sonner* Contradict Decisions Of This Court**

There are at least eight decisions of this Court addressing *Sonner* and/or the adequate remedy at law doctrine.  Defendants cite none of them.  Here is what this Court held when rejecting the same argument Defendants make here in another class action alleging claims under the UCL:

> Although some federal courts have dismissed UCL claims and other equitable relief claims where the plaintiff has pled claims that may provide adequate remedies at law, many other courts, ... have reached the opposite conclusion, finding no bar to the pursuit of alternative remedies at the pleadings stage.
>
> Seeing no basis in California or federal law for prohibiting the pursuit of alternate remedies at this early stage, **this court joins those courts declining to dismiss plaintiffs' equitable claims on this basis**.

*Espineli v. Toyota Motor Sales U.S.A., Inc.*, 2018 WL 3769383, at *4 (E.D. Cal. Aug. 9, 2018) (Mueller, J.) (emphasis added; internal citations and quotations omitted); *see also Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*, 2020 WL 3893395, at *4 (E.D. Cal. July 10, 2020) (Mueller, J.) (following *Espineli*).  As both this Court and the Ninth Circuit have held, Rule 8 permits plaintiffs to plead legal and equitable "theories of recovery in the alternative."  *Rice v. Kimberly-Clark Corp.*, 2022 WL 16804522, at *3 (E.D. Cal. Nov. 8, 2022) (Mueller, J.); *accord Moyle v. Liberty Mut. Retirement Ben. Plan.*, 823 F.3d 948, 962 (9th Cir. 2016).  The fact that a plaintiff alleges legal claims cannot be construed as an admission that the plaintiff has an adequate remedy that bars alternative equitable claims.  *See Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1985) ("a pleading should not be construed as an admission against another alternative or inconsistent pleading in the same case....").

Here, the Complaint includes an entire section titled "No Adequate Remedy At Law," which is far more than the "short and plain" allegation required by Rule 8.  *See* Compl., ¶¶ 35-

40.  Plaintiffs allege that legal remedies are not as "equally prompt and certain and in other ways efficient as equitable relief" because, for example, the equitable claims entail fewer elements compared to legal claims, and restitution is not necessarily the same as damages.  Compl., ¶¶ 37-39.  Those allegations are consistent with this Court's decision in *Lingle v. Centimark Corp.*, which held that '[a] legal remedy is 'adequate' only if it is at least as 'prompt and certain' as the equitable remedy and 'without impediment.'"  2023 WL 2976376, at *7 (E.D. Cal. Apr. 17, 2023) (Mueller, J.) (citing *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937)).  Numerous other courts have held that similar allegations are sufficient to defeat a motion to dismiss and distinguish *Sonner*.  *See Elgindy v. AGA Service Co.*, 2021 WL 1176535, at *15 (N.D. Cal. Mar. 29, 2021) ("significant differences in proof and certainty establish that their common-law fraud claim cannot serve as an adequate remedy at law displacing their fraud-based UCL and FAL claims."); *M.O. Dion & Sons, Inc. v. VP Racing Fuels, Inc.*, 2022 WL 18281526, at *8–9 (C.D. Cal. Nov. 2, 2022) (following *Elgindy* and collecting similar authorities).

### 2.   Defendants Offer No Independent Basis To Dismiss The UCL Claim Under The Unlawful Prong

Defendants' argument concerning the UCL's unlawful prong rests entirely on their arguments for dismissal of the other causes of action alleged in the Complaint.  *See* MTD, 14:10-20.  Hence, if the Court denies the motion to dismiss with respect to at least one other cause of action (as it should), the claim under the unlawful prong survives the pleadings too.

### 3.   Plaintiff Sufficiently Alleges A Cause Of Action Under The UCL's Fraud Prong

#### a.   Plaintiff Sufficiently Alleges A Duty To Disclose

Defendants argue that Plaintiff failed to allege a duty to disclose the defect.  *See* MTD, at 15:19-21; 16:3.  That is wrong.  As this Court has explained, "[t]o show a duty to disclose, the plaintiff must '[1] allege[] that the omission was material; [2] plead that the defect was central to the product's function; and [3] allege one of the four *LiMandri* factors.'"  *Rice*, 2022 WL

1   16804522 at *9 (quoting *Hodson v. Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018)).  "The

2   *LiMandri* factors relevant here include circumstances when the defendant has exclusive

3   knowledge of material facts not known or reasonably accessible to the plaintiff … or makes

4   partial representations that are misleading because some other material fact has not been

5   disclosed."  *Id.* (internal quotation omitted).  The Complaint includes allegations supporting

6   each of these requirements.

7        <u>First</u>, as for partial representations, this Court held in *Obertman* that the plaintiff

8   sufficiently alleged a partial representation with the following allegation:  "'by displaying the

9   Products and describing their features, the product packaging implied that the Products were

10   suitable for use as dehumidifiers, without disclosing that they had a critical defect that could

11   result in the Products being rendered completely useless."  *Obertman v. Electrolux Home Care*

12   *Prods., Inc.*, 482 F. Supp. 3d 1017, 1024 (E.D. Cal. 2020) (Mueller, J.) (quoting complaint).

13   Here, Plaintiff has a similar allegation in his Complaint:

> Defendant [sic] made partial representations to Plaintiff and class members, while
> suppressing the safety defect. Specifically, by displaying the gun safes and
> describing their biometric lock features, the product packaging and product
> webpages implied that they were suitable as gun safes, without disclosing that
> they had a critical safety-related defect related to the biometric lock. The products
> themselves also conveyed the impression that they had biometric functionality,
> because the biometric lock is clearly visible on the front of the products.
> However, there was no disclosure that the biometric lock was defective.

19   Complaint, ¶ 27.

20        <u>Second</u>, as for exclusive knowledge, Rule 9(b) permits allegations of knowledge to be

21   alleged "generally."  Fed. R. Civ. P. 9(b).  Equally important, Defendants' own authority

22   explained that "in general, courts have not defined 'exclusive' literally, but have found such

23   claims cognizable if the defendant has 'superior' knowledge of a defect that was not readily

24   apparent and there is no or only ... limited publicly available information about the defect."

*Kulp v. Munchkin*, *Inc.*, 678 F. Supp. 2d 1158, 1170 (C.D. Cal. 2023).  Here, Plaintiff alleges that "Plaintiff and class members did not know and did not have a reason to know that the gun safes were defective."  Complaint, ¶ 26.  Plaintiff also alleges that "Defendants had exclusive knowledge of" the defect (*id.*), and his Complaint includes nearly a full page of allegations explaining how they knew about the defect.  *Id.* at ¶¶ 28-33.

Third, Plaintiff also alleges reliance, materiality, and that the defect is central to the product's function.  Specifically, Plaintiff alleges that: (1) he "reviewed the floor model of the product on the sales floor, and the box that the product came in"; (2) "the fact that the biometric lock on the gun safe is defective is material" to him; and (3) if the defect had been disclosed to him, he "would not have purchased the gun safe, or would not have purchased it on the same terms."  *Id.* at ¶ 9.  Those allegations are similar to the allegations that this Court held were sufficient in *Obertman*.  *See Obertman*, 482 F. Supp. 3d at 1024.  The centrality of the defect to the product's function, as well as materiality, also can reasonably be inferred from the allegations that both Defendants warned customers that they should immediately stop using the gun safes regardless of whether they "appear[] to be ok," because they "pose[] a serious injury hazard and risk of death."  Complaint, ¶¶ 3, 19.

### b.   *Rattigan* Does Not Support Dismissal

Defendants rely on *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 40-41 (Cal. 2024), for the proposition that a manufacturer or retailer has no duty to disclose a known safety hazard absent a fiduciary relationship or "an existing relationship between the parties."  MTD, 15:10-16:3.  Taking Defendants' position to its logical but absurd conclusion, California's consumer protection statutes permit companies, in many cases, to sell products that they know pose an unreasonable safety hazard.  *Rattagan* held no such thing.

First, *Rattagan* did not involve a UCL or CLRA claim, which, as this Court explained in

1     *Rice*, have their own "distinct requirements" for an omission claim.  *See Rice*, 2022 WL

2     16804522, at *8.  In the context of UCL and CLRA claims, the Ninth Circuit has squarely held

3     that "[a] manufacturer has a duty to disclose a known defect that poses an unreasonable safety

4     hazard."  *Edwards v. Ford Motor Co.*, 603 Fed. Appx. 538, 541 (9th Cir. 2015) (citing *Wilson v.*

5     *Hewlett-Packard Co.*, 668 F.3d 1136, 1141-43 (9th Cir. 2012) and *Daugherty v. Am. Honda*

6     *Motor Co.*, 51 Cal. Rptr. 3d 118, 127 (2006)); *see also*, *e.g.*, *Morgan v. Harmonix Music Sys.,*

7     *Inc.*, 2009 WL 2031765 at *4 (N.D. Cal. July 7, 2009) ("according to all relevant case law,"

8     defendants are "under a duty to disclose a known defect in a consumer product when there are

9     safety concerns associated with the product's use.").

10          *Rattagan* did not address, much less overturn, this longstanding rule, and "prior

11     precedent that does not squarely address a particular issue" is not binding law.  *Garcia v.*

12     *Gateway Hotel L.P.*, 82 F.4th 750, 760 (9th Cir. 2023).  The only question in *Rattagan* was

13     whether "a plaintiff [may] assert a tort claim for fraudulent concealment arising from or related

14     to the performance of a contract."  *Rattagan*, 17 Cal. 5th at 14.  The case had nothing to do with

15     product defects, safety hazards, or the broad protections provided by the UCL and CLRA.  *Cf.,*

16     *e.g.*, *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1051 (9th Cir. 2017) ("…the UCL's scope

17     is broad, and its coverage is sweeping.") (internal quotations omitted).  If the *Rattagan* court had

18     intended to overrule years of law governing the duty to disclose known, hazardous defects, it

19     would have done so expressly, not silently or by implication.  *Cf. San Francisco Unified School*

20     *Dist. v. W.R. Grace & Co.*, 37 Cal. App. 4th 1318, 1332 (1995) ("If the California Supreme

21     Court intended to overrule these cases, it is unlikely that it would do so … sub silentio.").  So,

22     the Ninth Circuit's decisions in *Edwards* and *Wilson* setting forth a duty to disclose known

23     safety hazards remain controlling law.

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Second, Defendants appear to acknowledge in their brief that under *Rattagan*, one of the "preexisting relationships" that can support a duty to disclose is the relationship between a "seller and buyer," which clearly applies to Defendant Cabela's. *Rattagan*, 17 Cal. 5th at 40. In a one-sentence argument, Cabela's hand-waives away eleven paragraphs of the Complaint concerning the buyer-seller relationship as a "formulaic" recitation of the elements, but does not explain why it believes that is the case. MTD, 16:13-14 (citing Complaint, ¶¶ 22-33). "[A]rguments presented in such a cursory manner are waived." *Badgley v. U.S.*, 957 F.3d 969, 978-79 (9th Cir. 2020). Given that Plaintiff expressly alleged that he purchased a "Cabela's-brand Home Defense Safe …from a Bass Pro store in Manteca, California," and that Cabela's owns Bass Pro Shops, it is hard to see what more allegations would be needed to sufficiently put Cabela's on notice of a seller-buyer relationship. Complaint, ¶¶ 8, 11.

Defendant xPedition, on the other hand, takes inconsistent positions. xPedition first argues that it had no duty to disclose the safety defect because it had no relationship with Plaintiff; but later argues that the unjust enrichment claim must be dismissed due to some undisclosed "enforceable sales contract" that supposedly exists between the parties. *Compare* MTD at 15:25 *with id.* at 19:11. The nature and terms of that purported contract is, at this time, known only to xPedition. The upshot however, is that even if a preexisting relationship were required to establish a duty on the part of a manufacturer (contrary to *Edwards* and *Wilson*), xPedition's conflicting positions create a question of fact concerning such a relationship.

### c.   Defendants' Remaining Arguments Are Undeveloped And Lack Merit

Defendants have a scattershot of other undeveloped arguments, which are briefly addressed here. First, Defendants argue that "Plaintiff has not identified any false representations" made by either Defendant. MTD, 15:20-21; 16:7-12. That is because this is an omission case. However, Plaintiff **does** allege where the omissions occurred—the floor model,

the product packaging, Defendants' websites, and all other customer-facing documents—and

that had a disclosure been made, Plaintiff would not have purchased the gun safe or would not

have purchased it on the same terms.  Complaint, ¶¶ 9, 25.  Defendants do not argue these

allegations are insufficient; instead, they simply ignore them.

Defendants also argue, again without any elaboration, that "Plaintiff alleges that

xPedition and Cabela's engaged in a 'fraudulent conduct' and, without saying what they are

supposed to have done, he asserts that they acted intentionally."  MTD 14:25-27.  The

Complaint includes lengthy allegations describing the defect, and that Defendants knew about

but failed to disclose the defect:  the obvious and reasonable inference is that Defendants should

have disclosed the known defect.  *See* Complaint ¶¶ 17-20, 22-33.  Defendants also do not

explain why the allegations of intent are inadequate, but in any event, intent is not an element of

the UCL and may be alleged generally.  *See Power Quality & Elec. Sys., Inc. v. BP W. Coast

Prods LLC*, 2017 WL 119041 at *2 (N.D. Cal. Jan. 12, 2017) (the UCL "is distinct from

common law fraud" because, among other reasons, intent is not an element of the cause of

action) (citing *Morgan v. AT&T Wireless Servs. Inc.*, 177 Cal. App. 4th 1235, 1255 (2009));

Fed. R. Civ. P. 9(b) ("intent …may be alleged generally").

### 4. Plaintiff Sufficiently Alleges A Cause Of Action Under The UCL's Unfair Prong

There are three different tests for liability under the unfair prong of the UCL, and a split

of authority over which test governs: (1) the traditional "balancing test," (2) the "*Camacho* test"

(sometimes referred to as the "section 5 test") and (3) the "tethering test," which turns on

whether the misconduct at issue is tethered to an "underlying constitutional, statutory or

regulatory provision."  *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 612-13 (2014)

(describing split).  Defendants first quote the balancing test, but then say that Plaintiffs "must

1    allege facts supporting all three elements," apparently referring to the *Camacho* test. *See* MTD

2    16:19-24 (citing *Reguero v. FCA US, LLC*, 671 F. Supp. 3d 1085, 1098 (C.D. Cal. 2023)).[6]

3         However, "this court has consistently applied the traditional test for a consumer claim:

4    'A business practice is unfair within the meaning of the UCL if it violates established public

5    policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers

6    which outweighs its benefits.'" *Rice*, 2022 WL 16804522 at *9 (quoting *McKell v. Wash. Mut.*

7    *Inc.*, 142 Cal. App. 4th 1457, 1473 (2006)). Failure to disclose a defect satisfies this traditional

8    balancing test for the unfair prong, as well as the *Camacho* test. *See id.*; *Shin v. BMW of Am.*,

9    2009 WL 2163509 at *2 (C.D. Cal. July 16, 2009) (applying *Camacho* test).

10        Moreover, several courts, including this Court and the Ninth Circuit, have held that

11    "alleging a duty to disclose is not necessary to state a claim under the UCL's unfair prong."

12    *Rice*, 2022 WL 16804522 at *9; *see Hodson v. Mars*, 891 F.3d 857, 865-66 (9th Cir. 2018) ("the

13    lack of a duty to disclose does not necessarily dispose of claims under the unfair prong.").

14    Accordingly, a plaintiff can pursue an omission claim under the UCL's unfair prong even in the

15    absence of a separate duty to disclose under *LiMandri* or other case law. *See Torres v. Botanic*

16    *Tonics, LLC*, 709 F. Supp. 3d 856, 861-64 (N.D. Cal. 2023). This is because "California courts

17    have made clear that the California Legislature intended the unfair-practices prong of the UCL

18    to reach beyond existing law," and hence, "it runs contrary to the goal of the statute to insist that

19    a duty to disclose must have been created by the common law—or by some other source of

20    law—for liability to exist under the unfair-practices prong of the UCL." *Id.* at 861 (citing, *e.g.*,

21    *Cel-Tech Comms., Inc. v. LA Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)). Put another way, none

22

23    [6] The *Camacho* or section 5 test is as follows: "(1) [t]he consumer injury must be substantial; (2)
      the injury must not be outweighed by any countervailing benefits to consumers or competition;

24    and (3) it must be an injury that consumers themselves could not reasonably have avoided."
      *Graham*, 226 Cal. App. 4th at 613.

1    of the tests for liability under the unfair prong require a plaintiff "to allege the failure to comply

2    with independent legal requirements—relating to a duty to disclose or anything else." *Id.* at 862.

3           Finally, Defendants' own authority held that the question of whether a practice is unfair

4    "is generally a question of fact" that "usually cannot be made at the pleading stage." *Reguero*,

5    671 F. Supp. 3d at 1098; *see also Torres*, 709 F. Supp. 3d at 863 ("*Hodsdon*'s analysis under the

6    unfair-practices prong is best understood as a fact-specific consideration of whether the conduct

7    in question—the nondisclosure—was sufficiently harmful or unethical to support a UCL

8    claim.").  Accordingly, Defendants' arguments do not support dismissal.

9    **C.    Plaintiff Sufficiently Alleges A Cause Of Action Under the**
         **CLRA**

10

11          **1.    Defendants' Own Authority Contradicts Defendants'**
                 **Argument Concerning § 1782(b)**

12          Defendants argue that the "CPSC recall satisfies section 1782 and bars Plaintiff's

13   [CLRA] claim."  MTD at 17:16.  That is wrong for two reasons.  <u>First</u>, the only case that

14   Defendants cite is *In re Toyota Motor Corp. Hybrid Brake Mktg. Sales Pracs & Prod. Liab.*

15   *Litig.*, 890 F.Supp.2d 1210, 1218 (C.D. Cal. 2011) ("*Toyota*").  However, Defendants overlook

16   that *Toyota* rejected the same argument Defendants make here.  *Id.* ("Defendants contend that

17   Plaintiffs' CLRA and UCL claims for damages is rendered moot by Toyota's recall of the Class

18   Vehicles under Section 1782(b) of the CLRA….  The Court disagrees.").  The court went on to

19   explain that there was a question of fact that could not be resolved on the pleadings because

20   "[t]he truth of whether the recall cured the defect in the Class Vehicles cannot be determined at

21   the pleading stage." *Id.*  "Thus, Toyota's recall does not moot Plaintiffs' CLRA claim…." *Id.*

22          The same reasoning applies here because accepting Defendants' argument requires the

23   Court to draw inferences in Defendants' favor that the recall successfully corrected the problem,

24   without any evidence, and despite allegations that even the CPSC Commissioner appeared to

1   question the reliability of biometric gun safes after the industry-wide recalls.  *See Toyota*, 890 F.

2   Supp. 3d at 1218; *Postier v. Louisiana-Pac Corp.*, 2009 WL 3320470, at *5 (N.D. Cal. Oct. 13,

3   2009) (holding, as to CLRA claim, that "whether the recall has provided Plaintiff with a suitable

4   remedy and whether it was done so within a reasonable time is in dispute and cannot be decided

5   on a 12(b)(6) motion"); *see* Complaint, ¶¶ 1-2, 4.  Drawing inferences in Defendants' favor "is

6   the antithesis of the standard of review applicable to a motion to dismiss."  *In re Flash Memory*

7   *Antitrust Litig*, 643 F. Supp. 2d 1133, 1145 (N.D. Cal. 2009); *see also Lund v. Datzman*, 2024

8   WL 4267889 at *10 (E.D. Cal. Sept. 23, 2024) (On a Rule 12(b)(6) motion, "the Court does not

9   draw reasonable inferences in … Defendants' favor.").

10       Second, where § 1782(b) applies at all, it only bars an "action for damages," not

11   restitution.  The array of relief provided under the CLRA includes both "actual damages" and

12   "restitution," which are "separate and distinct" from eachother.  *See* Cal. Civ. Code

13   § 1780(a)(1), (3); *Krueger v. Wyeth, Inc.*, 396 F. Supp. 3d 931, 949 (S.D. Cal. 2019) ("actual

14   damages under the CLRA are a separate and distinct remedy from that of restitution under …

15   the CLRA"); *Wilens v. TD Waterhouse Grp., Inc.*, 120 Cal. App. 4th 746, 753 (2003) (a plaintiff

16   may bring a CLRA claim for "actual damages … or restitution.").  Construing § 1782(b) to

17   apply to restitution would be inconsistent with two rules of statutory construction in California:

18   (1) "[w]hen the Legislature uses different words or phrasing in contemporaneously enacted

19   statutory provisions, a strong inference arises that a different meaning was intended"[7]; and (2)

20   the CLRA must be "liberally" construed to effectuate its underlying purpose.  Cal. Civ. Code

21   § 1760.  Therefore, Defendants' arguments do not support dismissal of the CLRA claim.

22

23

24   [7] *In re C.H.*, 53 Cal. 4th 94, 107 (2011); *see also People v. Morgan*, 103 Cal. App. 5th 488, 508 (2024) (following *In re C.H.*).

1

### 2.     The Allegations Satisfy Rule 9(b)

2      Defendants argue that the allegations fail to satisfy Rule 9(b), but the only purported

3   deficiency they identify is that the "Complaint identifies no representations," and an unsupported

4   assertion that the Complaint "is devoid of facts" supporting the CLRA claim.  MTD at 18:9-12.

5   As explained above, this is an omission claim, not a misrepresentation claim.  "When a claim

6   rests on allegations of fraudulent omissions … the Rule 9(b) standard is somewhat relaxed

7   because a plaintiff cannot plead either the specific time of an omission or the place, as he is not

8   alleging an act, but a failure to act."  *Ashgari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d

9   1306, 1325 (C.D. Cal. 2013); *see Obertman*, 482 F. Supp. 3d at 1024 (an "omission or

10   concealment … is somewhat different from pleading an affirmative misrepresentation in that a

11   plaintiff cannot generally plead either the specific time of an omission or the place it occurred")

12   (internal quotation omitted).

13      As this Court has explained, "when in doubt, the court must ultimately be guided by the

14   question of how much detail is necessary to give adequate notice to an adverse party and to

15   enable that party to prepare a responsive pleading?"  *Langille v. Berthel, Fisher & Co. Fin. Servs,*

16   *Inc.*, 2020 WL 3961959 at *4 (E.D. Cal. July 13, 2020) (Mueller, J.) (cleaned up).  For example,

17   this Court held in the context of an omission claim that allegations that an email and webpage

18   failed to disclose certain information was sufficient for purposes or Rule 9(b), and that the

19   plaintiff was not required to submit copies of the email or website.  *See Pelletier v. Pacific*

20   *WebWorks, Inc.*, 2012 WL 43281 at *4 (E.D. Cal. Jan. 9, 2012) (Mueller, J.); *but see Rice*, 2022

21   WL 16804522 at *7 (holding plaintiffs must submit samples of advertisements where the

22   plaintiffs did not appear to dispute they were required to do so).

23      Here, the Complaint contains an entire section titled "The omissions," where Plaintiff

24   alleges that "Defendants described the products as biometric gun safes.  However, they failed to

disclose that due to a defect in the materials, workmanship, and/or design, the safe was prone to remain accessible to non-authorized people even after the biometric feature was properly set up." Complaint ¶ 22. "Defendants did not disclose the defect on the product packaging, the product page of their respective websites, the owner's manual, or in any other customer-facing document. Sales personnel and customer service representatives did not disclose the defect." *Id.* at ¶ 25. "[B]y displaying the gun safes and describing their biometric lock features, the product packaging and product webpages implied that they were suitable as gun safes, without disclosing that they had a critical safety-related defect related to the biometric lock." *Id.* at ¶ 27. "The products themselves also conveyed the impression that they had biometric functionality, because the biometric lock is clearly visible on the front of the products.  However, there was no disclosure that the biometric lock was defective." *Id.*  These allegations are similar to those that this Court held were sufficient in *Obertman*, 482 F. Supp. 3d at 1024, and Defendants do not explain why they lack adequate notice of the claims.

### D.     Plaintiff Sufficiently Alleges A Cause Of Action For Breach of Implied Warranty

Defendants seek dismissal of the breach of implied warranty claims because they disagree that the biometric gun safes are unsuitable for "ordinary use."  MTD at 18:21.  They couple this with a factual argument that "[t]his case does not involve a defect that impairs how a product is supposed to function," but instead the risk of "user error."  MTD at 19:3-4.  These arguments cannot be reconciled with Defendants' admissions about the gun safes, which are quoted in the Complaint:

> … Today, tucked away on a remote portion of Defendant Cabela's website that few people are likely to see, is a warning to customers to stop using the gun safes because they "**pose[] a serious injury hazard and risk of death**." Similarly, Defendant Fortress Safe warns customers on its own website that they "**should immediately stop using the biometric reader**" installed on the safe. Both Defendants admit that the guns safes are unsuitable for their intended purpose and pose an unreasonable safety hazard

---

1   Complaint, ¶ 3 (emphasis added); *see also id.* at ¶ 18.  Similarly, Defendants' warnings to "stop

2   using the product immediately" even if it "appears to be ok" are strong evidence that the

3   products were not suitable for their intended purpose.  *Id.* at ¶ 19; *cf. Warnshuis v. Bausch*

4   *Health U.S., LLC*, 2020 WL 3294808 at *11 (E.D. Cal. June 18, 2020) (allegations that a

5   product was contaminated and subject to recall supported breach of warranty claims).

6        Finally, although Defendants do not directly argue that the gun safes have now become

7   fit for their ordinary purpose as a result of the recall, that appears to be an implication in their

8   brief.  *See* MTD at 19:4.  As argued in Section II.C.1 above, that argument cannot support

9   dismissal because it rests on a factual question about whether the recall actually fixed the gun

10  safes.  *See Toyota*, 890 F. Supp. 3d at 1218 ("[t]he truth of whether the recall cured the defect in

11  the Class Vehicles cannot be determined at the pleading stage.").

12      **E.      Plaintiff Sufficiently Alleges A Cause Of Action For Unjust**
             **Enrichment**

13

14      Defendants first argue that the unjust enrichment claim must be dismissed because

15  Plaintiff has an adequate remedy at law.  MTD at 19:19-23.  However, the disgorgement of

16  profits is not an available remedy for legal claims, and therefore *Sonner* does not support

17  dismissal when the plaintiff seeks that remedy in connection with an unjust enrichment claim.

18  *See California Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 1176645, at *8 (N.D. Cal. Mar. 29,

19  2021) ("*California Gasoline*") (availability of damages did not preclude non-restitutionary

20  disgorgement); *Vance v. Church & Dwight Co., Inc.*, 2023 WL 2696826 at *5 (E.D. Cal. Mar.

21  29, 2023) (following *California Gasoline* and rejecting same argument Defendant makes here).

22      Here, as in *California Gasoline* and *Vance*, Plaintiff seeks non-restitutionary

23  disgorgement of Defendants' profits through his unjust enrichment claim, and alleges that he

24  lacks an adequate remedy at law.  *See* Complaint, ¶ 114 ("Putative class members lack an

    adequate remedy at law with respect to this claim and are entitled to non-restitutionary

1    disgorgement of the financial profits that Defendant [sic] obtained as a result of its [sic] unjust

2    conduct.").  The allegation here is nearly the same as the allegations that the courts in *California*

3    *Gasoline* and *Vance* held were sufficient to survive a Rule 12(b)(6) motion.  *See California*

4    *Gasoline*, 2021 WL 1176645 at *8 (quoting complaint); *Vance*, 2023 WL 2696826 at *5 (same).

5         Defendant also argues that it did nothing "inequitable" because it offered a recall and its

6    remedy "ensured that Plaintiff was made whole."  That is just a rehash of Defendants' mootness

7    argument, and ignores allegations that Defendants knowingly sold hazardous products without

8    disclosing the hazard, and then implemented a "deficient recall that allows both Defendants to

9    say they are doing the right thing, when in fact the primary objective is to protect their bottom

10   line."  Complaint, ¶¶ 4, 22-33.  Defendants may disagree with those allegations, but that is a

11   factual dispute that cannot be resolved on the pleadings.  *Cf. Pecanha v. The Hain Celestial*

12   *Grp., Inc.*, 2018 WL 534299 at *8 (N.D. Cal. Jan. 24, 2018) (whether defendant acted unjustly

13   involved "a question of fact that cannot be resolved at the 12(b)(6) phase").

14        Finally, in one sentence, Defendants state that the "unjust enrichment claim must be

15   dismissed because there was an enforceable sales contract," but they never develop that

16   argument, identify the contract, or explain its terms.  MTD, 19:11.  The Complaint includes no

17   allegations about a contract, and so Defendants' arguments impermissibly rest on matters

18   outside the pleadings.  *See Cross v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2019 WL

19   6496838 at *5 (E.D. Cal. Dec. 3, 2019) (Mueller, J.) ("Ordinarily, a 12(b)(6) motion confines

20   the court to the four corners of the complaint").  In at least two decisions, this Court has denied

21   dismissal of unjust enrichment claims based on the argument that there may be an enforceable

22   contract.  *See Obertman*, 482 F. Supp. 3d at 1028; *see also Copart, Inc. v. Sparta Consulting,*

23   *Inc.*, 2015 WL 3622618 at *15 (E.D. Cal. June 9, 2015) (Mueller, J.) (rejecting defendant's

24

argument that unjust enrichment claim must be dismissed because there may be enforceable contract).  The same outcome is warranted here.

## III.   CONCLUSION

The Court should deny Defendants' motion in its entirety.  If the Court determines that the pleadings are deficient in any respect, Plaintiff requests leave to amend to cure any such deficiencies.  *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017) (lower court erred by denying leave to amend after dismissing amended complaint).  If the Court dismisses any equitable claims based on Defendants' adequate remedy at law arguments, dismissal should be without prejudice to refiling a new, parallel state court action alleging any equitable claims dismissed here.  *See Guzman v. Polaris Indus., Inc.*, 49 F.4th 1308, 1314-15 (9th Cir. 2022) (if the adequate remedy doctrine applies, dismissal must be "without prejudice to refiling the same claim in state court").

Dated:  December 2, 2024                    Respectfully submitted,

   /s/    Joel D. Smith

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street,
5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail:  joel@skclassactions.com

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey
(State Bar No. 295032)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail:  yeremey@skclassactions.com

*Attorneys for Plaintiff*